NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| THOMAS LEE KENNARD, | : | Civil Action No. |
|  | : | 09-5972 (RBK) |
| Plaintiff, | : |  |
|  | : |  |
| v. | : | **OPINION** |
|  | : |  |
| MS D. ZICKEFOOSE, et al., | : |  |
|  | : |  |
| Defendants. | : |  |

**Kugler**, District Judge:

This matter comes before the Court upon Plaintiff's submission of a civil complaint ("Complaint") and an application to proceed in this matter in forma pauperis. See Docket Entries Nos. 1, 3 and 4. Plaintiff's in forma pauperis application qualifies him for in forma pauperis status, which will be granted, and the Clerk will be directed to file the complaint. Plaintiff's Complaint, however, will be dismissed for failure to state a claim upon which relief can be granted.

## I.  BACKGROUND

Plaintiff is a federal prisoner, currently serving his term at the F.C.I. Fort Dix, Fort Dix, New Jersey.  Plaintiff's conviction was rendered on the basis of his guilty plea, and he was sentenced to the prison term of five years.

Plaintiff's plea agreement stated, <u>inter alia</u>, as follows:

> Factual Basis for Guilty Plea[:] From January 26, 2006 through February 1, 2006, Special Agents from the Bureau of Immigration and Customs Enforcement identified [Plaintiff] through "Operation Emissary," an investigative effort focused on identifying and apprehending individuals purchasing subscription access to child pornographic websites. Investigation by special agents from I.C.E. revealed that on January 25, 2006, a Visa credit care issued to [Plaintiff] was used to purchase access to a members-only child pornographic website, where approximately 490 images were viewed and or downloaded.  On October 3, 2006, I.C.E agents conducted a search of [Plaintiff's] home subject to a search warrant and seized a computer and related computer items which revealed over 1700

2

> images of child pornography with children
> ranging from 4 to 16 years of age.  The
> images included children engaged in oral
> sex and intercourse with adults as well
> as images lasciviously displaying
> children's genital areas.

USA v. Kennard, 08-cr-20239 (MOB) (E.D. Mich.),

Docket Entry No. 11.

Plaintiff's criminal judgment at the Eastern

District of Michigan was entered on December 23,

2008, and his release on bond was revoked about

the same time or shortly thereafter.  See id.,

Docket Entries Nos. 3, 10 and 12 (initial bond

order, modified bond order and criminal

judgment).

Plaintiff asserts that one month later, i.e.,

"[o]n or about January 20th, 2009," Plaintiff

received a notice directing him to report to his

current place of confinement, the F.C.I. Fort

Dix.  See Instant Matter, Docket Entry No. 1, at

8.

Plaintiff's allegations challenge his current conditions of confinement; these challenges read as follows:

> I received a letter to report to [Fort Dix instead of reporting to] a medical unit.  On 2-10-09 I reported to Fort Dix in which I presented the medical staff with my letter from the opthamologist about my current eyesight [that] at this time I am considered legal blind and have been told that there is no cure for my condition.  On or about July 23rd I received a[n] eye exam from the optometrist in the medical building and he said that my eyes cannot be fixed in the institution.  I went back to find out that the medical director Ms. Abigil Lopez was waiting for to move to a medical unit, I came to find out that she wants an opthamologist to look at my eyes but she wants the optometrist to get up an appointment.  This right now is my current status, I am waiting on the medical staff to move me to a medical unit so maybe I can get a proper care for my eyes.

Id.

Plaintiff's request for relief reads as follows:

4

> I would ask the court for a release from
> the Bureau of Prisons since the BOP made
> the mistake of putting me in a prison
> instead of a medical unit and I would ask
> the court for damages in the amount of
> $9,000,000.

Id. at 9.

The Complaint names two individuals as Defendants in this matter: (1) the warden of Fort Dix, with regard to whom Plaintiff states that the warden's involvement in Plaintiff's case is "n/a," see id. at 6; and (2) Medical Director Abigil Lopez, with regard to whom Plaintiff asserts that her involvement in the case is limited to the fact that "[t]he Medical Department has only seen myself 1 time about my eyesight and I am now waiting to see another eye doctor for another exam but there is really nothing that anyone can do about it." See id. at 7.

## II.    STANDARD OF REVIEW

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  This action is subject to sua sponte screening for dismissal under both 28 U.S.C. § 1915(e) (2) (B) an § 1915A.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976), and Haines v. Kerner, 404 U.S. 519, 520-21 (1972)); see also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint as "frivolous" is an objective one.  See Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995). A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).

However, recently, the Supreme Court further clarified the standard for summary dismissal in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).  The

issue before the Supreme Court was whether

Iqbal's civil rights complaint adequately

alleged defendants' personal involvement in

discriminatory decisions regarding Iqbal's

treatment during detention at the Metropolitan

Detention Center.  The Court examined Rule

8(a)(2) of the Federal Rules of Civil Procedure

which provides that a complaint must contain "a

short and plain statement of the claim showing

that the pleader is entitled to relief."  Fed.

R. Civ. P. 8(a)(2).  Citing Bell Atlantic Corp.

v. Twombly, 550 U.S. 544 (2007), for the

proposition that "[a] pleading that offers

'labels and conclusions' or 'a formulaic

recitation of the elements of a cause of action

will not do,'" Iqbal, 129 S. Ct. at 1949

(quoting Twombly, 550 U.S. at 555), the Supreme

Court identified two working principles

underlying the failure to state a claim

standard:

> First, the tenet that a court must accept
> as true all of the allegations contained
> in a complaint is inapplicable to legal
> conclusions.  Threadbare recitals of the
> elements of a cause of action, supported
> by mere conclusory statements, do not
> suffice . . . .  Rule 8 . . . does not
> unlock the doors of discovery for a
> plaintiff armed with nothing more than
> conclusions.  Second, only a complaint
> that states a plausible claim for relief
> survives a motion to dismiss.
> Determining whether a complaint states a
> plausible claim for relief will . . . be
> a context-specific task that requires the
> reviewing court to draw on its judicial
> experience and common sense.  But where
> the well-pleaded facts do not permit the
> court to infer more than the mere
> possibility of misconduct, the complaint
> has alleged-but it has not "show[n] that
> the pleader is entitled to relief."  Fed.
> R. Civ. P. 8(a)(2).

Iqbal, 129 S. Ct. at 1949-1950 (citations

omitted).

The Court further explained that

> a court . . . can choose to begin by
> identifying pleadings that, because they
> are no more than conclusions, are not
> entitled to the assumption of truth.
> While legal conclusions can provide the
> framework of a complaint, they must be
> supported by factual allegations.

Id. at 1950.

Thus, to prevent a summary dismissal, civil complaints must now allege "sufficient factual matter" to show that a claim is facially plausible. This "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1948. The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must demonstrate that the allegations of his complaint *is* are plausible. See id. at 1949-50; see also Twombly, 550 U.S. at 555, & n.3; Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009).

Consequently, the Third Circuit observed that Iqbal provides the "final nail-in-the-coffin" for the "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that applied to federal complaints before Twombly.[1]  See Fowler, 578 F.3d 203.

> First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."  In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to "show" such an entitlement with its facts.  As the Supreme Court instructed

---

[1] Under Conley, a district court was permitted to summarily dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Under this "no set of facts" standard, a complaint could effectively survive [dismissal] so long as it contained a bare recitation of the claim's legal elements.

in <u>Iqbal</u>, "[w]here the well-pleaded facts
do not permit the court to infer more
than the mere possibility of misconduct,
the complaint has alleged-but it has not
'show [n]'-'that the pleader is entitled
to relief.'"  This "plausibility"
determination will be "a context-specific
task that requires the reviewing court to
draw on its judicial experience and
common sense."

<u>Fowler</u>, 578 F.3d 203 (citations omitted).

## III.   DISCUSSION

### A.  CONDITION OF LEGAL BLINDNESS

Since Plaintiff's allegations turn on his claim that he is legally blind, the Court begins its discussion by explaining what the term "legal blindness" means.

"Legal blindness" is different from being totally blind, <u>i.e.</u>, being unable to see at all, or even being "functionally blind," <u>i.e.</u>, having light perception without the ability to identify the source of light or to discriminate shapes. What is considered "legally blind" varies as

13

improvements are made to corrective lenses.
That is, "legally blind" is the condition where
a person's vision can no longer be made
near-perfect with corrective lenses.[2]   See
<<http://answers.ask.com/Health/Diseases/what_is
_legally_blind>>.

On a more technical level, the condition of
"legal blindness" could be explained as follows:
if someone is registered "legally blind," this
person has visual acuity of 20/200 or less in

---

[2] For instance, currently, the highest
prescription lenses reach to approximately 13.0
for near-sightedness.  Consequently, if a person
wears 12.5 lenses, (s)he is not considered
legally blind because glasses or contact lenses
will give this person near-perfect vision.
However, if degenerative myopia or another
ailment causes his/her eyes to require 13.5
lenses, (s)he would transition to being
considered legally blind.  One must bear in mind
that the person with 13.5 eyes can still wear
13.0 lenses, meaning that (s)he will see well
enough to get around without needing assistance.

his/her better eye with best correction possible.[3]   See <<http://www.clas.uiuc.edu/tech report/tech7.html>>.

Consequently, state regulations define "legal blindness" as a disability, see, e.g., Okla. Admin. Code § 612:10-11-2(a)(1)(A) ("Legal blindness is defined as a Visual Acuity of 20/200 or less in the better eye with best correction, or a visual field of 20 degrees or less. Best correction means the best visual acuity that can be obtained with normal prescription lenses"), requiring certain accommodations, rather than as a medical condition requiring a medical treatment.  See id. § 612:10-11-2(a)(1).  The same approach has

_____

   [3] Someone with average visual acuity may also be registered legally blind if his/her visual field is less than 20 degrees (while around 180 degrees is normal).  See <<http://www.clas.uiuc. edu/techreport/tech7.html>>.

15

been utilized by the federal courts that
addressed the claims of litigants asserting
"legal blindness."  See, e.g., LeFebre v.
Westinghouse Electric Corp., 747 F.2d 197, n.1
and accompanying text (4th Cir. 1984); Am.
Council of the Blind v. Paulson, 463 F. Supp. 2d
51, 53 (D.D.C. 2006); Coley v. Wexford Health
Sources, Inc., 2007 U.S. Dist. LEXIS 92874, at
*20 (S.D. Fla. Dec. 13, 2007).

Therefore, while "legal blindness" might
ensue from an unattended medical need or it may
worsen as a result of an unattended medical
need, the condition of "legal blindness" is not
the same and should not be confused for such
medical need.

Here, it is evident from the face of the
Complaint that Plaintiff entered the custody of
the BOP, and the F.C.I. Fort Dix in particular,

while being already diagnosed as "legally blind"
(and even being informed that his condition
cannot be corrected medically).  <u>See</u> Docket
Entry No. 1, at 8.  Consequently, the Complaint
cannot be read as alleging that Plaintiff's
"legal blindness" ensued from denial of medical
care by his prison officials.

**B.   Plaintiff's Request for Release**

The central theme of Plaintiff's allegations
is that he was "wrongfully" placed in a prison
rather than in a "medical unit," e.g., some form
of a hospital or a medical clinic.  Plaintiff,
however, errs in his opinion that the Eastern
District of Michigan sentenced Plaintiff, on his
child pornography charges, to five years of
being placed in medical facilities where
Plaintiff could become a medical miracle by

17

being cured from his incurable legal blindness.[4]

Rather, Plaintiff was sentenced to five years of

**federal imprisonment,** which means that the

_____

[4] In that respect, Plaintiff's claims resemble the allegations stated by the plaintiff in Pilkey v. Lappin, 2006 U.S. Dist. LEXIS 44418 (D.N.J. June 26, 2006), where the plaintiff "ask[ed] that the Court [to] award [him] one million two hundred thousand dollars [and also asked] the Court to order the [BOP] to do a complete medical examination of [the p]laintiff from head to toe, to insure that . . . [p]laintiff's medical needs are given the attention he deserves." Id. at *34-35.  The Pilkey court rejected these claims, noting:

> while [the p]laintiff appears to be of opinion that he was sentenced to imprisonment so the BOP would keep performing full medical examinations of [the p]laintiff "from head to toe" and to have a doctor at [the p]laintiff's disposal around the clock in order to detect every current and future [p]laintiff's medical need and provide [the p]laintiff with every treatment [the p]laintiff may wish for or fancy, the Eighth Amendment does not envision such a right. See Hudson v. McMillian, 503 U.S. 1, 9 (1992) ("Society does not expect that prisoners will have unqualified access to health care").

Id. at *37.

Plaintiff's sentencing court directed Plaintiff to be held **in confinement at a correctional facility** over which the BOP has exclusive control.[5]

In the event Plaintiff wishes to assert, now, that he should be granted clemency on the grounds of his legal blindness, his so-construed assertion should be dismissed by the Court as being without merit or, at best, misaddressed: inmates do not have a substantive due process right to clemency, see Herrera v. Collins, 506 U.S. 390 (1993), and the courts have no power to grant clemency releases since such power is vested solely and exclusively in the administrative branch of the government.

---

[5]   The Court notes, in passing, that a prisoner possesses no liberty interest arising from the Due Process Clause in being held at any particular place of confinement. See, e.g., Olim v Wakinekona, 461 U.S. 238, 245-46 (1983); Meachum v. Fano, 427 U.S. 215, 224-25 (1976).

## C.  Eighth Amendment Considerations

Under the Eighth Amendment, a confined

person has a protected right in being

incarcerated at a place of confinement

confirming to the standards set forth by the

Eighth Amendment.  The Constitution "does not

mandate comfortable prisons," Rhodes v.

Chapman, 452 U.S. 337, 349 (1981), but neither

does it permit inhumane ones, and it is now

settled that "the treatment a prisoner receives

in prison and the conditions under which he is

confined are subject to scrutiny under the

Eighth Amendment." Helling v. McKinney, 509

U.S. 25, 31 (1993).  In its prohibition of

"cruel and unusual punishments, the Eighth

Amendment . . . imposes duties on [prison]

officials, who must provide humane conditions of

confinement; prison officials . . . must take

20

reasonable measures to guarantee the safety of
the inmates." Hudson v. Palmer, 468 U.S. 517,
526-527 (1984), see  Helling, 509 U.S. at 31-32;
Washington v. Harper, 494 U.S. 210, 225 (1990);
Estelle v. Gamble, 429 U.S. 97, 103 (1976).  The
Eighth Amendment prohibits conditions which
involve the unnecessary and wanton infliction of
pain or are grossly disproportionate to the
severity of the crime warranting imprisonment.
See Rhodes, 452 U.S. at 346, 347.  The cruel and
unusual punishment standard is not static, but
is measured by "the evolving standards of
decency that mark the progress of a maturing
society."  Rhodes, 452 U.S. at 346 (quoting Trop
v. Dulles, 356 U.S. 86, 101 (1958)).

Thus, to prevail on a medical care claim
under the Eighth Amendment, an inmate must show
that the defendants were deliberately

indifferent to his serious medical needs.  See
Estelle v. Gamble, 429 U.S. 97; Rouse v.
Plantier, 182 F.3d 192, 197 (3d Cir. 1999).
Persistent severe pain qualifies as a serious
medical need.   A medical need is serious where
it "has been diagnosed by a physician as
requiring treatment or is . . . so obvious that
a lay person would easily recognize the
necessity for a doctor's attention."   Monmouth
County Correctional Institution Inmates v.
Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert.
denied, 486 U.S. 1006 (1988).

     "Deliberate indifference" exists "where [a]
prison official: (1) knows of a prisoner's need
for medical treatment but intentionally refuses
to provide it; (2) delays necessary medical
treatment based on a non-medical reason; or (3)
prevents a prisoner from receiving needed or

recommended medical treatment." <u>Rouse</u>, 182 F.3d at 197.  Furthermore, deliberately delaying necessary medical diagnosis for a long period of time in order to avoid providing care constitutes deliberate indifference that is actionable.  <u>See</u> <u>Durmer v. O'Carroll</u>, 991 F.2d 64 (3d Cir. 1993).  Deliberate indifference is also evident where officials erect arbitrary and burdensome procedures that result in interminable delays and denials of medical care to suffering inmates.  <u>See</u> <u>Monmouth County Correctional Institution Inmates v. Lanzaro</u>, 834 F.2d 326, 346-47 (3d Cir. 1987), <u>cert. denied</u> 486 U.S. 1006 (1998).  However, neither inconsistencies or differences in medical diagnoses, nor refusal to consider inmate's self-diagnoses, to summon the medical specialist of the inmate's choice, to perform tests or

procedures that the inmate desires, to explain
to the inmate the reason for medical action or
inaction, or to train the inmate to perform
medical procedures can amount to cruel and
unusual punishment.  See White v. Napoleon, 897
F.2d 103 (3d Cir. 1990).

Here, Plaintiff did not allege that he
suffers of any medical need, moreover a serious
medical need; rather, Plaintiff suffers of a
disability that his pre-incarceration
opthamologist described as an incurable
condition.  Therefore, Plaintiff's prison
officials cannot be "deliberately indifferent"
to the medical need Plaintiff does not have.[6]

---

[6]  The sole statement that could be read as
vaguely related to the Eighth Amendment
protections is Plaintiff's closing phrase that
he would like to be housed in a medical unit so
he could "get proper care for [his] eyes."
Docket Entry No. 1, at 8.  However, the
Complaint is wholly silent as to what exactly is
that "proper care," whether Plaintiff requested

Indeed, it appears from Plaintiff's Complaint that his prison officials are considering transferring Plaintiff to the medical unit of the F.C.I. Fort Dix merely for the purposes of providing additional -- i.e., constitutionally not required -- accommodations for his disability, doing it merely with the goal of making Plaintiff's execution of his daily affairs even less burdensome on Plaintiff.

Therefore, if Plaintiff's allegations are construed as an Eighth Amendment claim asserting

---

that particular "proper care" or the need for such specific "proper care" was prescribed by a medical doctor or evident to a layperson, and what were the circumstances under which Plaintiff's prison officials denied Plaintiff that particular "proper care" in the fashion that demonstrated their deliberate indifference to his medical needs.  In light of the fact that the Complaint is entirely void of any factual statements to that effect, the Court has no reason to construe Plaintiff's desire to obtain that unspecified "proper care" as a denial of medical care amounting to a violation of constitutional magnitude.

denial of medical care, this claim shall be
dismissed as factually without merit.

### D.  Plaintiff's Allegations Against Warden

Plaintiff's factual assertions in support of
his claim against the Warden are limited to the
abbreviation "n/a." See Docket Entry No. 1, at
6.  Since, under Iqbal, a plaintiff must assert
the facts showing each defendant's personal
involvement in the wrong allegedly suffered by
the plaintiff, Plaintiff's allegations against
the Warden would be subject to dismissal even if
other allegations in the Complaint stated a
viable claim.

### E.  Plaintiff's Allegations Against Lopez

Plaintiff's allegations against Lopez are
limited to Plaintiff's disappointment that,
during the few months Plaintiff was housed at
Fort Dix, Plaintiff had only one eye exam.

However, Plaintiff neither asserts that he requested additional eye exams from Lopez (and that he was refused those exams), nor does he explain how these additional eye exams could affect his permanent disability.

In sum, as drafted, Plaintiff's Complaint states no facts suggesting denial of a particular medical care.  In fact, the Complaint fails to even hint that Plaintiff is subjected to any unconstitutional conditions of confinement.

## IV.    LEAVE TO AMEND

Although the Court recognizes that a pro se pleading is held to less stringent standards than more formal pleadings drafted by attorneys, see Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972), and leave to amend should be liberally granted, such

grant is not warranted where it is clear from
the face of the pleading that the deficiencies
of the litigant's factual allegations cannot be
cured by allowing amended pleadings.  <u>See</u>
<u>Grayson v. Mayview State Hosp.</u>, 293 F. 3d 103,
110-111 (3d Cir. 2002); <u>Shane v. Fauver</u>, 213 F.
3d 113, 117 (3d Cir. 2000).  In this case,
nothing alleged by Plaintiff insinuates that he
could cure the deficiencies in the Complaint by
amending it.  However, solely out of abundance
of caution and in consideration of the
possibility that Plaintiff might have been
utterly confused and unaware of his duty to
detail the pertinent facts when he referred to
his desire to obtain unspecified "proper care,"
the Court will allow Plaintiff an opportunity to
amend his complaint by stating the **exact medical
needs** he had unaddressed by his prison officials

or the **exact accommodations** he was denied.

Plaintiff's statements to that effect must specify the time frame of the relevant events, the particular persons involved, and the exact circumstances surrounding these events, <u>i.e.</u>, whether Plaintiff made his needs known or those needs were pre-identified by a medical doctor or they were such that they were obvious to a layperson, as well as what responses or actions where made/undertaken (or what exact requests were denied) by each particular person named as Defendant.  **Plaintiff is expressly warned that no generic observations or expressions of Plaintiff's disappointment with the fact of his legal blindness or his incarceration will be entertained.**

## V.   CONCLUSION

For the foregoing reasons, Plaintiff's application to proceed in this matter <u>in forma pauperis</u> will be granted. Plaintiff's Complaint will be dismissed without prejudice to Plaintiff's filing a timely and duly detailed amended complaint.

An appropriate Order accompanies this Opinion.

<u>Robert B. Kugler,</u>
**Robert B. Kugler,**
**United States District Judge**

Dated: 3/24/10