**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| THOMAS LEE KENNARD, | Civil Action No. |
| Plaintiff, | 09-5972 (RBK) |
| v. | |
| MS D. ZICKEFOOSE, et al., | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | |

It appearing that:

1. This matter was initiated upon the Clerk's receipt of Plaintiff's original civil complaint and his application to proceed in this matter in forma pauperis. See Docket Entry No. 1.

2. This Court granted Plaintiff's in forma pauperis application, directed the Clerk to file the original complaint and dismissed it for failure to state a claim upon which relief can be granted; such dismissal was without prejudice to Plaintiff's filing of amended complaint. See Docket Entries Nos. 2 and 3.

3. The discussion of Plaintiff's challenges provided in the Court's opinion accompanying the order of dismissal was extensive. In light of the Court's now-conclusive closure of this matter, the Court finds it warranted to replicate, in this Memorandum Opinion and Order, the key aspects of the Court's prior discussion. Specifically, the Court stated:

> Plaintiff is a federal prisoner, currently serving his term at the F.C.I. Fort Dix, Fort Dix, New Jersey. Plaintiff's conviction was rendered on the basis of his . . . subscription . . . to child pornographic websites [resulting in having, on his] computer . . . over 1700 images of child pornography with children ranging from 4 to 16 years of age . . . engaged in oral sex and intercourse with adults as well as images lasciviously displaying children's genital areas. . . . Plaintiff's allegations challenge his current conditions of confinement . . . . [Plaintiff asserts that, upon entering] Fort Dix [he informed the staff that he was] considered legal[ly] blind . . . . [His] request for relief read[]: "I would ask the court for a release from the Bureau of Prisons since the BOP made the mistake of putting me in a prison instead of a medical unit and I would ask the court for damages in the amount of $9,000,000." The

Complaint name[d] two . . . Defendants . . . : (1) the warden of Fort Dix, with regard to whom Plaintiff states that the warden's involvement in Plaintiff's case [was] "n/a"; and (2) Medical Director Abigil Lopez, with regard to whom Plaintiff assert[ed] that . . . that "[t]he Medical Department has only seen myself 1 time about my eyesight . . . ." [upon explaining to Plaintiff the applicable standard of review, this Court observed that] Plaintiff's allegations turn on his claim that he is legally blind . . . . "Legal blindness" is different from being totally blind, i.e., being unable to see at all, or even being "functionally blind," i.e., having light perception without the ability to identify the source of light or to discriminate shapes. What is considered "legally blind" varies as improvements are made to corrective lenses.  That is, "legally blind" is the condition where a person's vision can no longer be made near-perfect with corrective lenses.  For instance, currently, the highest prescription lenses reach to approximately 13.0 for near-sightedness.  Consequently, if a person wears 12.5 lenses, (s)he is not considered legally blind because glasses or contact lenses will give this person near-perfect vision.  However, if degenerative myopia or another ailment causes his/her eyes to require 13.5 lenses, (s)he would transition to being considered legally blind.  One must bear in mind that the person with 13.5 eyes can still wear 13.0 lenses, meaning that (s)he will see well enough to get around

without needing assistance.  On a more technical level, the condition of "legal blindness" could be explained as follows: if someone is registered "legally blind," this person has visual acuity of 20/200 or less in his/her better eye with best correction possible. Consequently, state regulations define "legal blindness" as a disability [not] requiring a medical treatment.  The same approach has been utilized by the federal courts that addressed the claims of litigants asserting "legal blindness." Therefore, while "legal blindness" might ensue from an unattended medical need or it may worsen as a result of an unattended medical need, the condition of "legal blindness" is not the same and should not be confused for such medical need.

   Here, it is evident from the face of the Complaint that Plaintiff entered the custody of the BOP, and the F.C.I. Fort Dix in particular, while being already diagnosed as "legally blind" (and even being informed that his condition cannot be corrected medically). Consequently, the Complaint cannot be read as alleging that Plaintiff's "legal blindness" ensued from denial of medical care by his prison officials.

   The central theme of Plaintiff's allegations is that he was "wrongfully" placed in a prison  rather than in a "medical unit," e.g., some form of a hospital or a medical clinic.  Plaintiff, however, errs in his opinion that the Eastern District of Michigan sentenced Plaintiff, on his child pornography charges, to five years of being

4

placed in medical facilities where Plaintiff could become a medical miracle by being cured from his incurable legal blindness.  Rather, Plaintiff was sentenced to five years of federal imprisonment, which means that the Plaintiff's sentencing court directed Plaintiff to be held in confinement at a correctional facility over which the BOP has exclusive control.  The Court notes, in passing, that a prisoner possesses no liberty interest arising from the Due Process Clause in being held at any  particular place of confinement. In the event Plaintiff wishes to assert, now, that he should be granted clemency on the grounds of his legal blindness, his so-construed assertion should be dismissed by the Court as being without merit or, at best, misaddressed: inmates do not have a substantive due process right to clemency, and the courts have no power to grant clemency releases since such power is vested solely and exclusively in the administrative branch of the government.
     Under the Eighth Amendment, a confined person has a protected right in being incarcerated at a place of confinement confirming to the standards set forth by the Eighth Amendment. . . . [T]o prevail on a medical care claim under the Eighth Amendment, an inmate must show that the defendants were deliberately indifferent to his serious medical needs. . . .    Here, Plaintiff did not allege that he suffers of any medical need, moreover a serious medical need; rather, Plaintiff suffers of a disability that his pre-incarceration

5

opthamologist described as an incurable condition. Therefore, Plaintiff's prison officials cannot be "deliberately indifferent" to the medical need Plaintiff does not have. . . . Therefore, if Plaintiff's allegations are construed as an Eighth Amendment claim asserting denial of medical care, this claim shall be dismissed as factually without merit.

Plaintiff's factual assertions in support of his claim against the Warden are limited to the abbreviation "n/a." . . . [U]nder *Iqbal*, a plaintiff must assert the facts showing each defendant's personal involvement in the wrong allegedly suffered by the plaintiff, Plaintiff's allegations against the Warden would be subject to dismissal even if other allegations in the Complaint stated a viable claim.

Plaintiff's allegations against Lopez are limited to Plaintiff's disappointment that, during the few months Plaintiff was housed at Fort Dix, Plaintiff had only one eye exam. However, Plaintiff neither asserts that he requested additional eye exams from Lopez (and that he was refused those exams), nor does he explain how these additional eye exams could affect his permanent disability.

In sum, as drafted, Plaintiff's Complaint states no facts suggesting denial of a particular medical care. . . . In this case, nothing alleged by Plaintiff insinuates that he could cure the deficiencies in the Complaint by amending it. However, solely out of abundance of caution and in consideration of the possibility that

6

> Plaintiff might have been utterly confused and unaware of his duty to detail the pertinent facts when he referred to his desire to obtain unspecified "proper care," the Court will allow Plaintiff an opportunity to amend his complaint by stating the exact medical needs he had unaddressed by his prison officials or the exact accommodations he was denied.

Docket Entry No. 2, at 2-28 (footnotes 2 and 5 incorporated in the maintext, the remaining footnotes, discussions of pertinent legal standards, citations to docket entries, legal and medical sources omitted).

4.  In response, Plaintiff submitted his amended complaint.  <u>See</u> Docket Entry No. 4.  In his amended complaint, Plaintiff raised his request for monetary remedy from $9 million to $15 million, and asserted as follows:

> Warden . . . was wade aware of my condition and the tact that I face substantial risk of serious bodily injury or death . . . .  On 2/10/09 I entered Fort Dix . . . . During intake I was examiaad by Dr Abigail Lopez [and] presented [her with my] evaluation

7

>     [that I had] cataracts in both eyes. [Dr.
>     Lopez] was unable to make an asse[ss]ment . .
>     . .   [No consultation by an optometrist]
>     occurred . . . .   I was . . . placed on the
>     second floor upon a top bank placing me in
>     imminent danger of serious injury or death.

Docket Entry No. 4, at 5.

5.  Plaintiff's claims against the warden are without merit, since Plaintiff's claims about his hypothetical "bodily injury or death" is purely speculative.  Accord Dawson v. Frias, 2010 U.S. Dist. LEXIS 30513 at *8 (D.N.J. Mar. 30, 2010) ("speculation as to what might or might not happen in the future" cannot serve as a basis for a valid claim) (citing Rouse v. Pauliilo, 2006 U.S. Dist. LEXIS 17225 (D.N.J. Apr. 5, 2006) (dismissing speculative claim and citing Kirby v. Siegelman, 195 F.3d 1285 (11th Cir. 1999)); Pilkey v. Lappin, 2006 U.S. Dist. LEXIS 44418, at *45 (D.N.J. June 26, 2006) ("Plaintiff's [anxiety paraphrased as his claim of] fail[s] to state a

claim upon which relief may be granted"); Patterson v. Lilley, 2003 U.S. Dist. LEXIS 11097 (S.D.N.Y. June 20, 2003) (defendants could only be found indifferent to an existing condition, not to a speculative future injury)). Indeed, the very fact of Plaintiff's being housed at the second floor (or being allocated to a top bunk) produced neither bodily injury nor death of Plaintiff for the last twenty-two months, and his claim that his injury or death are "imminent" are divorced from factual realities.

6. In contrast, Plaintiff's claims against Cr. Lopez appear, at least theoretically, plausible in the event: (a) Plaintiff's cataracts were medically treatable at the time Plaintiff entered the facility;[1] and (b) Plaintiff shows that he

---

[1] Since cataract blur one's vision and, to attain the degree of legal blindness, cataract has to blur the shapes and colors to a very high degree, this Court is not entirely clear as to

9

suffered an "injury" as a result of having this medical condition unattended.² Therefore, out of abundance of caution, the Court will proceed this sole narrowly-tailored claim past the <u>sua sponte</u> dismissal stage and will direct responsive pleadings.

IT IS on this  21st  day of  December , 2010,

ORDERED that the Clerk shall terminate Warden Zickefoose as Defendant in this matter; and it is further

---

how Plaintiff was able – while having such cataracts – indulge in consumption of child pornography on his computer prior to his incarceration.

² At this juncture, the Court fails to fancy an "injury" that Plaintiff suffered, since it does not appear either that Plaintiff's vision deteriorated in comparison with the condition it was in at the time of Plaintiff's entry into custody or that Plaintiff suffered any other injury spurring from his cataracts. However, at this juncture, the Court – not having established any liability – need not reach the issue of viability of damages.

10

ORDERED that the Clerk shall issue summons, and the United States Marshal shall serve a copy of the complaint, summons, and this Order upon Defendants Lopez, pursuant to 28 U.S.C. § 1915(d); and it is further

ORDERED that Defendant Lopez shall file and serve a responsive pleading within the time specified in Federal Rule of Civil Procedure 12, pursuant to 42 U.S.C. § 1997e(g)(2); and it is further

ORDERED that the Clerk of the Court shall serve a copy of this Order, by regular mail, upon Plaintiff; and it is finally

ORDERED that the Clerk shall not alter the size of the font selected by this Court on the basis on Plaintiff's alleged visual impairment.

                                          s/Robert B. Kugler
                                          **Robert B. Kugler, U.S.D.J.**

Dated: December 21, 2010