**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
_____
                                   :
THOMAS LEE KENNARD,                :
                                   :
              Plaintiff,           :   Civil Action No. 09-5972 (RBK)
                                   :
        v.                         :   MEMORANDUM OPINION
                                   :
Ms. D. ZICKEFOOSE, et al.,         :
                                   :
              Defendants.          :
_____:
```

This matter comes before the Court upon Defendant Lopez's motion ("Motion"), see Docket Entry No. 23, seeking dismissal of Plaintiff's claims, pursuant to Rule 56 of the Federal Rules of Civil Procedure.  For the reasons set forth below, Defendant's Motion will be granted, and Plaintiff's claims will be dismissed.

I.   **LEGAL STANDARD**

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) if, on the record, "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Carrasca v. Pomeroy, 313 F.3d 828, 832-33 (3d Cir. 2002).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit.  See Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 248 (1986).  In deciding whether summary judgment

should be granted, the Court considers the facts drawn from the

"pleadings, the discovery and disclosure materials on file, and

any affidavits" and must "view the inferences to be drawn from

the underlying facts in the light most favorable to the party

opposing the motion."  Fed. R. Civ. P. 56(c); Curley v. Klem, 298

F.3d 271, 276-77 (3d Cir. 2002) (internal quotations omitted).

However, while the Court shall "view the facts in the light

most favorable to the nonmoving party and draw all inferences in

that party's favor," Andreoli v. Gates, 482 F.3d 641, 647 (3d

Cir. 2007) (citation omitted), summary judgment will not be

denied based on mere allegations or denials in the pleadings;

instead, some evidence must be produced to support a material

fact, and this requires more than the "mere existence of a

scintilla of evidence" supporting the non-moving party.[1]

Anderson, 477 U.S. at 252; see also Fed. R. Civ. P. 56(c)(1)(A);

United States v. Premises Known as 717 S. Woodward Street,

Allentown, Pa., 2 F.3d 529, 533 (3d Cir. 1993).  Thus, to survive

---

[1] Simply put, self-serving "unsupported allegations . . .
and pleadings are insufficient to repel summary judgment."
Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir.
1990); see also Anderson, 477 U.S. at 248 (the party opposing the
motion for summary judgment cannot rest on mere allegations and
instead must present actual evidence that creates a genuine issue
as to a material fact for trial); Siegel Transfer, Inc. v.
Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995); Fed.
R. Civ. P. 56(e) (requiring nonmoving party to "set forth
specific facts showing that there is a genuine issue for trial").

a motion for summary judgment, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," Anderson, 477 U.S. at 249, since the party that will bear the burden of proof at trial "must make a showing sufficient to establish the existence of an element essential to that party's case."  Celotex, 477 U.S. at 322.[2]

## II.   BACKGROUND

### 1.    Procedural Background

Plaintiff filed his original complaint on November 24, 2009; that submission was made pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).  See Docket Entry No. 1.  This Court screened the original complaint, see Docket Entries Nos. 2 and 3, and dismissed it without prejudice to Plaintiff's filing of an amended pleading.  See Docket Entry No. 2 (detailing, at length, the pleading

---

[2] Conversely, when the moving party has the burden of proof on an issue at trial, that party has "the burden of supporting their motions 'with credible evidence . . . that would entitle [them] to a directed verdict if not controverted at trial.'"  In re Bressman, 327 F.3d 229, 237 (3d Cir. 2003) (quoting Celotex, 477 U.S. at 331); see also United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) ("When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it . . . must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party") (emphasis removed, internal citations omitted).  Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists.  See Jersey Cent. Power & Light Co. v. Lacey Twp., 772 F.2d 1103, 1109 (3d Cir. 1985).

requirement, explaining why Plaintiff's request for release was not actionable in a civil matter, as well as why Plaintiff's request for serving his prison term by being housed in a medical facility was without merit, setting forth – in great detail – the legal standard governing Eighth Amendment claims raised by convicted individuals asserting denial of medical care, and carefully explaining why an inmate cannot raise valid challenges against a state official merely on the basis of that state official's supervisory capacity).  The Court pointed out that all Plaintiff's contentions stated in the original complaint were facially invalid; however, the Court noted that Plaintiff's allegations could be read as indicative of Plaintiff's interest in asserting that Defendant Lopez ("Lopez") denied Plaintiff's requests for eye examinations, and that such denial caused injury to Plaintiff's eyes.  See Docket Entry No. 2, at 26-27.  The Court, therefore, allowed Plaintiff an opportunity to cure the deficiencies of his claims by filing an amended complaint.  See id. at 28-29; see also Docket Entry No. 3.

On May 3, 2010, Plaintiff submitted his amended pleading, see Docket Entry No. 4, and the Court screened Plaintiff's amended complaint for sua sponte dismissal.  See Docket Entry No. 15.  Upon such screening, the Court dismissed Plaintiff's claims against his warden, see id. at 8-9, and turned to Plaintiff's claims against Lopez.  With regard to these claims, the Court

4

found as follows:

> Plaintiff's claims against Lopez appear, at least
> theoretically, plausible in the event: (a) Plaintiff's
> cataracts were medically treatable at the time
> Plaintiff entered the facility; and (b) Plaintiff shows
> that he suffered an "injury" as a result of having this
> medical condition unattended [by Lopez].  Therefore,
> out of abundance of caution, the Court will proceed
> this sole narrowly-tailored claim past the sua sponte
> dismissal stage and will direct responsive pleadings.

Id. at 9-10.

Consequently, this matter proceeded to its due litigation.

On April 22, 2011, Lopez moved for summary judgment.  See Docket

Entry No. 23; Plaintiff was duly served with Lopez's Motion but

elected not to oppose it.  See generally, Docket.

**2.   Undisputed Material Facts**

a.   Substantive Aspects

Plaintiff is an inmate confined at the Federal Correctional

Institution at Fort Dix, New Jersey ("Fort Dix"); he was admitted

to that facility on or about February 10, 2009, and – during the

admission procedures – underwent a medical intake screening.  The

intake screening was performed by Lopez, the Clinical Director at

the Fort Dix.  During Plaintiff's screening, Lopez learned from

Plaintiff that he had been diagnosed with a genetic eye disease

leading to incurable blindness.  Upon completing the screening,

Lopez requested that an optometrist would examine Plaintiff.

Four months later, Plaintiff was examined by his primary care

physician, who determined that Plaintiff's eyesight remained the

same as it was during the intake and verified that Plaintiff was still scheduled for – and was about to obtain – an eye exam. Indeed, just two weeks later, Plaintiff was evaluated by an optometrist, who took note of Plaintiff's eye disease and Plaintiff's prescription glasses, and concluded that Plaintiff's eyesight was stable.  Therefore, Plaintiff was scheduled for a re-evaluation one year later, that is, in the summer of 2010.

On July 7, 2010, Plaintiff was examined by an ophthalmologist.  During that examination, Plaintiff's medical chart was re-evaluated; in addition, the ophthalmologist took note of Plaintiff's complaints that his vision was poor and he was walking into walls, and that he had difficulty recognizing people.  In light of these observations, the ophthalmologist concluded that cataracts were blocking the amount of light entering Plaintiff's eyes and recommended cataract surgeries as to both eyes.  These surgeries (first with regard to Plaintiff's right eye, and then with regard to his left eye) were performed the next month, that is, in August 2010, with one week gap between the surgeries.

Three days after the second surgery, that is, on August 30, 2010, Plaintiff was examined by his primary care physician who noted that Plaintiff's eyesight improved, including Plaintiff's distant vision.  Plaintiff's progress was further followed during his October 25, 2010, appointment with the ophthalmologist, his

October 29, 2010, appointment with the optometrist, and then during his January 25, 2011, and February 9, 2011, follow-up appointments with the ophthalmologist.

In sum, while Plaintiff asserts that Lopez denied him medical care by refusing him examination of his eyes by eye doctors, the record shows that such examinations continuously took place after Lopez, who examined Plaintiff only once, during the intake screening, requested treatment for Plaintiff's eyes.

b.    Administrative Exhaustion Aspect

Plaintiff did not exhaust his administrative remedies with regard to his claim against Lopez.

For the purposes of a Bivens action, the BOP Administrative Remedy Program is a three-tier process that is available to inmates confined in institutions operated by the BOP for "review of an issue which relates to any aspect of their confinement." 28 C.F.R. § 542.10.  An inmate must initially attempt to informally resolve the issue with institutional staff.   See 28 C.F.R. § 542.13(a).  If informal resolution fails or is waived, an inmate may submit a BP-9 Request to "the institution staff member designated to receive such Requests (ordinarily a correctional  counsel)" within 20 days of the date on which the basis for the Request occurred, or within any extension permitted.  See 28 C.F.R. § 542.14.  An inmate who is dissatisfied with the Warden's response to his BP-9 Request may

submit a BP-10 Appeal to the Regional Director of the BOP within 20 days of the date the Warden signed the BP-8 response.  See 28 C.F.R. § 542.15(a).  The inmate may appeal to the BOP's General Counsel on a BP-11 form within 30 days of the day the Regional Director signed the BP-9 response.  See id.  Appeal to the General Counsel is the final administrative appeal.  See id.  If responses are not received by the inmate within the time allotted for reply, "the inmate may consider the absence of a response to be a denial at that level."  28 C.F.R. § 542.18.

Here, Plaintiff did not file *any* administrative grievances related to his claims against Lopez, and he admitted this fact in his amended complaint.  See Docket Entry No. 4, at 4.  He asserted that he could not exhaust his administrative remedies because he was unable to read the grievance forms, and no assistance was offered to him.  See id. at 5.  However, the discovery established that, during Plaintiff's confinement at Fort Dix, the facility's law library was open every day of the week for a total of about 50 hours, and it was staffed by three inmate law library clerks per shift, so they could assist inmates with their legal needs, including completion of administrative grievances.  Moreover, it appears undisputed that Plaintiff did not attempt to submit a "home-made" grievance (executed on a mere sheet of paper rather than on a pre-printed form) and, thus, no such "home-made" grievance was ever denied by prison officials on

the grounds of Plaintiff's failure to utilize a pre-printed form

or on any other ground.  Furthermore, it is self-evident that

Plaintiff could complete this District's pre-printed complaint

forms, twice, first in order to produce his original complaint in

November 2009 and then to produce his amended complaint in May

2010, even though these forms, just as prison grievance forms,

utilized relatively small pre-printed fonts.  See Docket Entries

Nos. 1 and 4.

**III.  ANALYSIS**

    **1.    Plaintiff's Claims Shall Be Dismissed As Unexhausted**

       The above-detailed administrative exhaustion requirement

applies to a wide-range of inmate complaints, including to the

challenges grounded in alleged violations of the Eighth

Amendment.  See Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004);

Booth v. Churner, 206 F.3d 289 (3d Cir. 2000).  While this

exhaustion requirement is not a jurisdictional bar to litigation,

the requirement is strictly enforced by the courts.  This

rigorous enforcement is mandated by a fundamental recognition

that exhaustion requirement of § 1997e promotes important public

policies.  As the United States Court of Appeals for the Third

Circuit has noted:

> Courts have recognized myriad policy considerations in
> favor of exhaustion requirements.  They include (1)
> avoiding premature interruption of the administrative
> process and giving the agency a chance to discover and
> correct its own errors; (2) conserving scarce judicial

resources, since the complaining party may be
successful in vindicating his rights in the
administrative process and the courts may never have to
intervene; and (3) improving the efficacy of the
administrative process. Each of these policies, which
Congress seems to have had in mind in enacting the
PLRA, is advanced by the across-the-board, mandatory
exhaustion requirement in § 1997e(a) . . . . [A]
comprehensive exhaustion requirement better serves the
policy of granting an agency the "opportunity to
correct its own mistakes with respect to the programs
it administers before it is haled into federal court."
Moreover, "even if the complaining prisoner seeks only
money damages, the prisoner may be successful in having
the [prison] halt the infringing practice" or fashion
some other remedy, such as returning personal property,
reforming personal property policies, firing an abusive
prison guard, or creating a better screening process
for hiring such guards.  And when a prisoner obtains
some measure of affirmative relief, he may elect not to
pursue his claim . . . .  In either case, local actors
are given the chance to address local problems, and at
the very least, the time frame for the prisoner's
damages is frozen or the isolated acts of abuse are
prevented from recurring.  An across-the-board
exhaustion requirement also promotes judicial
efficiency . . . .  Moreover, even if only a small
percentage of cases settle, the federal courts are
saved the time normally spent hearing such actions and
multiple appeals thereto . . . .  In cases in which
inmate-plaintiffs exhaust their remedies in the
administrative process and continue to pursue their
claims in federal court, there is still much to be
gained.  The administrative process can serve to create
a record for subsequent proceedings, it can be used to
help focus and clarify poorly pled or confusing claims,
and it forces the prison to justify or explain its
internal procedures.  All of these functions help
courts navigate the sea of prisoner litigation in a
manner that affords a fair hearing to all claims.

Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000) (citations

omitted).  Because of the important policies fostered by this

exhaustion requirement, it has been held that there is no

futility exception to the exhaustion requirement, no exception

for the claims seeking solely injunctive relief, etc.  See id.;
see also Canals-Santos v. Ebbert, 2010 U.S. Dist. LEXIS 23091, at
*8 (M.D. Pa. Mar. 11, 2010) ("contrary to [the inmate's]
assertion that he is exempt from the exhaustion requirement
because he solely seeks injunctive relief, the Prison Litigation
Reform Act . . . makes no distinction between claims for damages,
injunctive relief, or both, and therefore, the exhaustion of
administrative remedies still would be required before filing
suit").  Instead, courts have typically required across-the-board
administrative exhaustion by inmate plaintiffs who seek to pursue
claims in federal court.  Moreover, courts have also imposed a
procedural default component on this exhaustion requirement,
holding that inmates must fully satisfy the administrative
requirements of the inmate grievance process before proceeding
into federal court.  See Spruill, 372 F.3d 218.  Applying this
procedural default standard to the Section 1997e exhaustion
requirement, courts have concluded that inmates who fail to
fully, or timely, complete the prison grievance process are
barred from subsequently litigating claims in federal court.
See, e.g., Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla
v. Strickland, 304 Fed. App'x 22 (3d Cir. 2008); Jetter v. Beard,
183 Fed. App'x 178 (3d Cir .2006).[3]

---

[3] Applying this procedural default component, an inmate
cannot also excuse a failure to timely comply with these
grievance procedures by simply claiming that his efforts

This broad rule admits an equitable exception.  See Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000).  The courts, however, have recognized a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." Davis, 49 Fed. App'x at 368.  Therefore, an inmate's failure to exhaust will only be excused under very certain limited circumstances, and (s)he can defeat a claim of failure to exhaust only by showing "[(s)]he was misled [by the prison officials as to his obligation to exhaust] or that there was some extraordinary reason [(s)]he was prevented from complying with the statutory mandate."  Harris, 149 Fed. App'x at 59; Davis, 49 Fed. App'x at 368.

Here, there are no allegations by Plaintiff that he was ever misled by the Fort Dix officials about his obligation to exhaust administrative remedies.  Moreover, the undisputed material facts do not paint a picture where Plaintiff experienced extraordinary

---

constituted "substantial compliance" with the statutory exhaustion requirement.  See Harris v. Armstrong, 149 Fed. App'x 58, 59 (3d Cir. 2005).  Nor can an inmate avoid this exhaustion requirement by merely alleging that the BOP's policies were not clearly explained to him.  See Davis v. Warman, 49 Fed. App'x 365, 368 (3d Cir. 2002).  Thus, an inmate's confusion regarding these grievances procedures does not excuse a failure to exhaust. See Casey v. Smith, 71 Fed. App'x 916 (3d Cir. 2003). Moreover, an inmate cannot cite to alleged staff impediments to grieving a matter as grounds for excusing a failure to exhaust, if it also appears that the prisoner did not pursue a proper grievance once those impediments were removed.  See Oliver v. Moore, 145 Fed. App'x 731 (3d Cir. 2005) (failure to exhaust not excused if, after staff allegedly ceased efforts to impede grievance, prisoner failed to follow through on grievance).

circumstances warranting excuse exhaustion: here, Plaintiff had

access to the law library and was free to ask the staff expressly

designated to assist inmates for help with completion of his

grievance forms.[4]  Moreover, Plaintiff's execution of his

original complaint and his amended complaint in 2009 and 2010

indicate that Plaintiff was either able to master the forms on

his own or could and did obtain assistance with producing the

necessary submissions.

Consequently, the narrowly-defined equitable exception to

the exhaustion requirement is inapplicable to the case at bar

and, under the sweeping rule enunciated in Nyhuis v. Reno,

Plaintiff's challenges should be dismissed for failure to exhaust

his administrative remedies.  Correspondingly, Lopez is entitled

to summary judgment on procedural default grounds.

2.    **Plaintiff's Claims Shall Be Dismissed Substantively**

Even if this Court were to hypothesize that Plaintiff's poor

vision could, somehow, amount to extraordinary circumstances

warranting excuse of the exhaustion requirement, Lopez is

entitled to summary judgment on substantive grounds.

An inmate has a protected right in being incarcerated at a

place of confinement confirming to the standards set forth by the

---

[4] Plaintiff's allegations that nobody "offered" him
assistance does not alter this Court's analysis, since the prison
officials are not obligated to act as clairvoyants and guess the
needs of the inmates without the inmates' requests for
assistance.

Eighth Amendment.  The Constitution "does not mandate comfortable prisons," Rhodes v. Chapman, 452 U.S. 337, 349 (1981), but neither does it permit inhumane ones, and it is now settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993). In its prohibition of "cruel and unusual punishments, the Eighth Amendment . . . imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials . . . must take reasonable measures to guarantee the safety of the inmates." Hudson v. Palmer, 468 U.S. 517, 526-527 (1984), see Helling, 509 U.S. at 31-32; Washington v. Harper, 494 U.S. 210, 225 (1990); Estelle v. Gamble, 429 U.S. 97, 103 (1976).  The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  See Estelle v. Gamble, 429 U.S. 97, 103-04 (1976).  In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must show: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. See id. at 106.  To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious.

Here, Plaintiff is suffering from an incurable genetic

disease; therefore, the only medical care for that disease is monitoring of his eyesight and prescription of eyeglasses. Apparently, Plaintiff also suffered from cataracts of both eyes that, arguably, qualified as a serious medical need, since a cataract is a condition which, if left untreated, could result in a lifelong handicap or permanent loss of sight.  See Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir.1987), cert. denied, 486 U.S. 1006 (1988).

Therefore, the totality of Plaintiff's asserted serious medical needs amounted to monitoring of his eyesight and cataract surgeries.

"Deliberate indifference" exists "where [a] prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Rouse, 182 F.3d at 197.  Furthermore, deliberately delaying necessary medical diagnosis for a long period of time in order to avoid providing care constitutes deliberate indifference that is actionable.  See Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993). Deliberate indifference is also evident where officials erect arbitrary and burdensome procedures that result in interminable delays that deny medical care to suffering inmates.  See Lanzaro, 834 F.2d at 346-47.

Here, Plaintiff's claims against Lopez are limited to his assertions that Lopez herself, not being an eye doctor, could not examine Plaintiff's eyes, and that she never requested examination of Plaintiff's eyes by an eye doctor.  However, the former claim fails to assert a violation of Plaintiff's Eighth Amendment rights (since Lopez, being the Clinical Director, had no constitutional obligation to "play" an eye doctor; on the contrary, she was obligated not to venture into the areas of medicine in which she had no expertise), and the latter claim is contradicted by undisputed material facts, i.e., by the record showing that Lopez promptly requested an examination of Plaintiff's eyes, and that Lopez's actions resulted in evaluation of Plaintiff's eyesight by an optometrist and an ophthalmologist, and in an improvement of Plaintiff's eyesight as a result of cataract surgeries and constant monitoring.  Since the undisputed material facts unambiguously establish lack of deliberate indifference on Lopez's part, she is entitled to summary judgment in her favor on substantive Eighth Amendment grounds.[5]

---

[5] Lopez also asserts that Plaintiff is not entitled to injunctive relief in the form of transfer to a medical facility for the purposes of permanent housing.  However: (a) this issue is inapposite to Lopez's motion for summary judgment, since Lopez, being merely the Fort Dix Clinical Director, could theoretically order Plaintiff's temporary hospitalization for the purposes of a certain medical treatment that could be performed only in a hospital but she had no power to direct Plaintiff's transfer from one facility to another (or from a prison facility to a medical institution) for the purposes of permanent housing associated with Plaintiff's serving his term of imprisonment; and

**IV.   CONCLUSION**

In light of the foregoing, Lopez's motion for summary judgment, Docket Entry No. 23, will be granted, and Plaintiff's still-outstanding claims will be dismissed with prejudice.  The Court will withdraw its jurisdiction over this matter, and the Clerk will be directed to close the file on this action.

An appropriate Order accompanies this Memorandum Opinion.

s/Robert B. Kugler
**Robert B. Kugler**
**United States District Judge**

Dated: December 5, 2011

---

in any event, (b) the insufficiency of Plaintiff's claims seeking release or permanent housing in a medical facility (rather than in a prison) was already addressed by this Court in its initial decision entered in this matter, see Docket Entry No. 2, at 17-19, and need not be revisited at the instant juncture.