**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

_____
                                    :
THOMAS LEE KENNARD,                 :
                                    :
        Plaintiff,               :   Civil Action No. 09-5972 (RBK)
                                    :
    v.                            :
                                    :
Ms. D. ZICKEFOOSE, et al.,          :   **MEMORANDUM OPINION AND ORDER**
                                    :
        Defendants.              :
_____:

    This matter comes before the Court upon Plaintiff's filing of two motions, namely, his "Motion for Extension of Time to Show Cause," see Docket Entry No. 26, and "Motion to Deny Summary Judgment," see Docket Entry No. 28, and it appearing that:

1. On October 24, 2009, Plaintiff commenced the instant matter by submitting his civil complaint, executed pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), and accompanied the same with his application to prosecute this action in forma pauperis. See Docket Entries Nos. 1 and 1-1.

2. On March 29, 2010, this Court issued an opinion and order granting Plaintiff in forma pauperis status, detailing to Plaintiff the deficiencies of his complaint and allowing Plaintiff an opportunity to amend his pleading. See Docket Entries Nos. 2 and 3 (explaining, at length, the pleading requirement, as well as why Plaintiff's request for release

      was not actionable in a civil matter, why Plaintiff's request for serving his prison term by being housed in a medical facility failed to state a viable claim, setting forth – in great detail – the legal standard governing Eighth Amendment claims raised by convicted individuals asserting denial of medical care, and pointing out that an inmate cannot raise challenges against a state official merely on the basis of the official's supervisory capacity).

3. On May 3, 2010, Plaintiff filed his amended complaint. See Docket Entry No. 4. The Court screened the amended complaint for sua sponte dismissal, determined that Plaintiff's claims against his warden, based solely on the warden's supervisory position was not cognizable in this matter, and directed service of the amended pleading on the remaining Defendant, Lopez. See Docket Entries Nos. 15, 18-20.

4. Almost a year later, that is, on April 22, 2011, Lopez moved for summary judgment. See Docket Entry No. 23. The Court examined the record and granted summary judgment in favor of Lopez, dismissing Plaintiff's claims with prejudice and directing termination of this matter. See Docket Entries Nos. 24 and 25.

5. The Court's opinion issued in connection with said dismissal detailed both procedural history and factual predicate of

underlying Plaintiff's claims. The relevant facts were summarized as follows:

> Plaintiff is an inmate confined at the Federal Correctional Institution at Fort Dix, New Jersey ("Fort Dix"); he was admitted to that facility on or about February 10, 2009, and — during the admission procedures — underwent a medical intake screening. The intake screening was performed by [Defendant Dr.] Lopez, the Clinical Director at the Fort Dix. During Plaintiff's screening, Lopez learned from Plaintiff that he had been diagnosed with a genetic eye disease leading to incurable blindness. Upon completing the screening, Lopez requested that an optometrist would examine Plaintiff. Four months later, Plaintiff was examined by his primary care physician, who determined that Plaintiff's eyesight remained the same as it was during the intake and verified that Plaintiff was still scheduled for — and was about to obtain — an eye exam. Indeed, just two weeks later, Plaintiff was evaluated by an optometrist, who took note of Plaintiff's eye disease and Plaintiff's prescription glasses, and concluded that Plaintiff's eyesight was stable. Therefore, Plaintiff was scheduled for a re-evaluation one year later, that is, in the summer of 2010. On July 7, 2010, Plaintiff was examined by an ophthalmologist. During that examination, Plaintiff's medical chart was re-evaluated; in addition, the ophthalmologist took note of Plaintiff's complaints that his vision was poor and he was walking into walls, and that he had difficulty recognizing people. In light of these observations, the ophthalmologist concluded that cataracts were blocking the amount of light entering Plaintiff's eyes and recommended cataract surgeries as to both eyes. These surgeries (first with regard to Plaintiff's right eye, and then with regard to his left eye) were performed the next month, that is, in August 2010, with one week gap between the surgeries. Three days after the second surgery, that is, on August 30, 2010, Plaintiff was examined by his primary care physician who noted that Plaintiff's eyesight improved, including Plaintiff's distant vision. Plaintiff's progress was further followed during

>   his October 25, 2010, appointment with the
>   ophthalmologist, his October 29, 2010, appointment
>   with the optometrist, and then during his January
>   25, 2011, and February 9, 2011, follow-up
>   appointments with the ophthalmologist.  In sum,
>   while Plaintiff asserts that Lopez denied him
>   medical care by refusing him examination of his
>   eyes by eye doctors, the record shows that such
>   examinations continuously took place after Lopez,
>   who examined Plaintiff only once, during the
>   intake screening, requested treatment for
>   Plaintiff's eyes.

Docket Entry No. 24, at 5-7.

Then, turning to administrative history of this matter, the

Court observed:

>   Plaintiff did not exhaust his administrative
>   remedies with regard to his claim against Lopez. .
>   . .  Plaintiff did not file *any* administrative
>   grievances related to his claims against Lopez,
>   and he admitted this fact in his amended
>   complaint.  He asserted that he could not exhaust
>   his administrative remedies because he was unable
>   to read the grievance forms, and no assistance was
>   offered to him.  However, the discovery
>   established that, during Plaintiff's confinement
>   at Fort Dix, the facility's law library was open
>   every day of the week for a total of about 50
>   hours, and it was staffed by three inmate law
>   library clerks per shift, so they could assist
>   inmates with their legal needs, including
>   completion of administrative grievances.
>   Moreover, it appears undisputed that Plaintiff did
>   not attempt to submit a "home-made" grievance
>   (executed on a mere sheet of paper rather than on
>   a pre-printed form) and, thus, no such "home-made"
>   grievance was ever denied by prison officials on
>   the grounds of Plaintiff's failure to utilize a
>   pre-printed form or on any other ground.
>   Furthermore, it is self-evident that Plaintiff
>   could complete this District's pre-printed
>   complaint forms, twice, first in order to produce
>   his original complaint in November 2009 and then
>   to produce his amended complaint in May 2010, even
>   though these forms, just as prison grievance

        forms, utilized relatively small pre-printed fonts.

Id. at 7-9.

6. Having explained the standard governing summary judgment motions, see id. at 1-3, the Court then examined Lopez's position (asserting that Plaintiff's amended complaint warranted dismissal on both substantive and procedural grounds) and found that position well warranted. Addressing, first, the issue of exhaustion, the Court explained the governing legal regime, see id. at 9-12, and then ruled on the circumstances of the instant matter as follows:

> Here, there are no allegations by Plaintiff that he was ever misled by the Fort Dix officials about his obligation to exhaust administrative remedies. Moreover, the undisputed material facts do not paint a picture where Plaintiff experienced extraordinary circumstances warranting excuse exhaustion: here, Plaintiff had access to the law library and was free to ask the staff expressly designated to assist inmates for help with completion of his grievance forms. Moreover, Plaintiff's execution of his original complaint and his amended complaint in 2009 and 2010 indicate that Plaintiff was either able to master the forms on his own or could and did obtain assistance with producing the necessary submissions. Plaintiff's allegations that nobody "offered" him assistance does not alter this Court's analysis, since the prison officials are not obligated to act as clairvoyants and guess the needs of the inmates without the inmates' requests for assistance. Consequently, the narrowly-defined equitable exception to the exhaustion requirement is inapplicable to the case at bar and, under the sweeping rule enunciated in Nyhuis v. Reno, Plaintiff's challenges should be dismissed for failure to exhaust his administrative remedies. Correspondingly, Lopez

5

      is entitled to summary judgment on procedural default grounds.

      <u>Id.</u> at 12-13 and n. 4 (footnoted language incorporated into the main text).

7. However, the Court did *not* end its analysis at that; rather, the Court observed:

> Even if this Court were to hypothesize that Plaintiff's poor vision could, somehow, amount to extraordinary circumstances warranting excuse of the exhaustion requirement, Lopez is entitled to summary judgment on substantive grounds.

<u>Id.</u> at 13.

Upon so stating, the Court re-explained the test applicable to Eighth Amendment claims, <u>id.</u> at 13-15, and then detailed the reason why Lopez was entitled to summary judgment as follows:

> Here, Plaintiff is suffering from an incurable genetic disease; therefore, the only medical care for that disease is monitoring of his eyesight and prescription of eyeglasses. Apparently, Plaintiff also suffered from cataracts of both eyes that, arguably, qualified as a serious medical need, since a cataract is a condition which, if left untreated, could result in a lifelong handicap or permanent loss of sight. Therefore, the totality of Plaintiff's asserted serious medical needs amounted to monitoring of his eyesight and cataract surgeries. . . . . Plaintiff's claims against Lopez [however,] are limited to his assertions that Lopez herself, not being an eye doctor, could not examine Plaintiff's eyes, and that she never requested examination of Plaintiff's eyes by an eye doctor. However, the former claim fails to assert a violation of Plaintiff's Eighth Amendment rights (since Lopez, being the Clinical Director, had no constitutional obligation to "play" an eye doctor; on the

6

>    contrary, she was obligated not to venture into
>    the areas of medicine in which she had no
>    expertise), and the latter claim is contradicted
>    by undisputed material facts, i.e., by the record
>    showing that Lopez promptly requested an
>    examination of Plaintiff's eyes, and that Lopez's
>    actions resulted in evaluation of Plaintiff's
>    eyesight by an optometrist and an ophthalmologist,
>    and in an improvement of Plaintiff's eyesight as a
>    result of cataract surgeries and constant
>    monitoring.  Since the undisputed material facts
>    unambiguously establish lack of deliberate
>    indifference on Lopez's part, she is entitled to
>    summary judgment in her favor on substantive
>    Eighth Amendment grounds.  Lopez also asserts that
>    Plaintiff is not entitled to injunctive relief in
>    the form of transfer to a medical facility for the
>    purposes of permanent housing.  However: (a) this
>    issue is inapposite to Lopez's motion for summary
>    judgment, since Lopez, being merely the Fort Dix
>    Clinical Director, could theoretically order
>    Plaintiff's temporary hospitalization for the
>    purposes of a certain medical treatment that would
>    be performed in a hospital but she had no power to
>    direct Plaintiff's transfer from one facility to
>    another (or from a prison facility to a medical
>    institution) for the purposes of permanent housing
>    associated with Plaintiff's serving his term of
>    imprisonment; and in any event, (b) the
>    insufficiency of Plaintiff's claims seeking
>    release or permanent housing in a medical facility
>    (rather than in a prison) was already addressed by
>    this Court in its initial decision entered in this
>    matter [and dismissed with prejudice on a number
>    of alternative grounds].
>
> Id. at 15-18 and n. 5 (footnoted language incorporated into the main text).  The Court, therefore, granted Lopez summary judgment on both procedural and substantive grounds, alternatively.  See id. at 19.

8.  Following the Court's entry of summary judgment, Plaintiff filed his two motions at bar.  His first motion, Docket

    Entry No. 26, titled "Motion for Extension of Time to Show Cause" was, seemingly, intended to operate as a motion for extension of time to file his next motion (seeking reconsideration of this Court's order granting summary judgment to Lopez). Since Plaintiff already filed his second motion, Docket Entry No. 28, seemingly setting forth Plaintiff's request for such reconsideration, Plaintiff's first motion (seeking extension of time) became facially moot and warrants dismissal of that ground.[1] The Court, therefore, turns to Plaintiff's substantive motion, Docket Entry No. 28, which challenges the Court's final judgment disposing of this matter.

9. Plaintiff's motion seeking reconsideration recites, once again, the fact that Plaintiff's vision was poor, asserts that Plaintiff was denied access to a magnification device and, in addition, maintains that Plaintiff "requested help through Law Librarian Mr. Smith but [Mr. Smith] failed to respond to his copeouts [sic]."[2] Docket Entry No. 28-1. In light of the foregoing, Plaintiff asserts that his amended complaint qualifies for excuse from exhaustion requirement

---

[1] Being mindful of Plaintiff's pro se litigant status, the Court presumes Plaintiff's motion for reconsideration filed timely and finds it in the interest of justice to entertain that motion regardless of the date of its filing.

[2] The Court presumes that the phrase "his copeouts" means "Plaintiff's administrative grievances."

and, in support of that position, provided two affidavits, one executed by Plaintiff himself and another executed by certain Benjamin P. Foreman ("Foreman"). See Docket Entries Nos. 28, 28-1, 28-2 and 28-3. Plaintiff's affidavit states that he "spoke to several different law clerks who worked in the Law Library at FCI Fort Dix and they simply told [Plaintiff] that helping [Plaintiff to] prepare grievances [was] not part of their job and the only way they could help [Plaintiff was] if Mr. Smith was to instruct them to do so." Docket Entry No. 28-3, at 1. This statement, seemingly, aims to foster Plaintiff's position that "Mr. Smith's" actions (or, to be more precise, inaction) prevented Plaintiff from obtaining assistance of law library staff, and that development could be read as a basis for excuse of exhaustion. In contrast, the rationale of Plaintiff's decision to submit Foreman's affidavit is not entirely clear to this Court, since Foreman's affidavit states that Foremain is currently incarcerated at FCI Milan, Michigan, where he is a law librarian technician, and – prior to that – was incarcerated in and acted as a law library clerk at FCI Gilmer, West Virginia, and that Foreman had not encountered a BOP program assisting inmates like Plaintiff, either at FCI Milan or at FCI Gilmore, and Foreman was not

aware of a BOP regulation directing such assistance.[3]  See Docket Entry No. 28-2.

10. Lopez argues that Plaintiff's motion shall be denied, since the allegations set forth in Plaintiff's affidavit cannot qualify as "newly discovered" evidence, or as evidence of BOP and/or Lopez's fraud, or as evidence of exceptional circumstances, and so Plaintiff's amended complaint shall remain dismissed.  See Docket Entry No. 29, at 6-7.  The Court agrees with the conclusion reached by Lopez, although with a clarification that the rationale for the Court's finding to that effect is somewhat different.

11. A motion for reconsideration is a device of limited utility. There are only four grounds upon which a motion for reconsideration might be granted: (a) to correct manifest errors of law or fact upon which the judgment was based; (b) to present newly-discovered or previously unavailable

---

[3] Lopez, being understandably perplexed by Plaintiff's election to submit Foreman's affidavit, noted that Foreman's experiences at federal facilities other than Fort Dix, or Foreman's admission of his limited command of BOP regulations, were not relevant to the case at bar.  See Docket Entry No. 29, at 2.  The Court shares in Lopez's uncertainty as to the basis for Plaintiff's decision to submit Foreman's affidavit and finds Foreman's statements wholly irrelevant to the issues at hand, especially in light of Plaintiff's own averment that, in Fort Dix, a single word from "Mr. Smith" would necessarily result in Plaintiff obtaining assistance from Fort Dix law library staff, regardless of the practices employed in any other federal correctional facility or those promoted by BOP regulations.

evidence; (c) to prevent manifest injustice;[4] and (d) to accord the decision to an intervening change in prevailing law.  See 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2810.1 (2d ed. 1995); see also Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985), cert. denied, 476 U.S. 1171 (1986) (purpose of motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence).  "To support reargument, a moving party must show that dispositive factual matters or controlling decisions of law were overlooked by the court in reaching its prior decision."  Assisted Living Associates of Moorestown, L.L.C., v. Moorestown Tp., 996 F. Supp. 409, 442 (D.N.J. 1998).  In contrast, mere disagreement with the district court's decision is an inappropriate ground for a motion for reconsideration: such disagreement should be raised through

---

[4]  In the context of a motion to reconsider, the term "manifest injustice" "[generally . . . means that the Court overlooked some dispositive factual or legal matter that was presented to it," In re Rose, 2007 U.S. Dist. LEXIS 64622, at *3 (D.N.J. Aug. 30, 2007), making the definition an overlap with the prime basis for reconsideration articulated in Harsco, that is, the need "to correct manifest errors of law or fact upon which the judgment was based."  Alternatively, the term "manifest injustice" could be defined as "'an error in the trial court that is direct, obvious, and observable.'"  Tenn. Prot. & Advocacy, Inc. v. Wells, 371 F.3d 342, 348 (6th Cir. 2004) (quoting Black's Law Dictionary 974 (7th ed. 1999)).  "[M]ost cases [therefore,] use the term 'manifest injustice' to describe the result of a plain error."  Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1425 (5th Cir. 1996).

the appellate process.  See id. (citing Bermingham v. Sony Corp. of America, Inc., 820 F. Supp. 834, 859 n.8 (D.N.J. 1992), aff'd, 37 F.3d 1485 (3d Cir. 1994); G-69 v. Degnan, 748 F. Supp. 274, 275 (D.N.J. 1990)); see also Drysdale v. Woerth, 153 F. Supp. 2d 678, 682 (E.D. Pa. 2001) (a motion for reconsideration may not be used as a means to reargue unsuccessful theories).  Consequently, "[t]he Court will only entertain such a motion where the overlooked matters, if considered by the Court, might reasonably have resulted in a different conclusion."  Assisted Living, 996 F. Supp. at 442; see also Continental Cas. Co. v. Diversified Indus., Inc., 884 F. Supp. 937, 943 (E.D. Pa. 1995) ("[M]otions for reconsideration should be granted sparingly"); Edward H. Bohlin, Co. v. Banning Co., Inc., 6 F.3d 350, 355 (5th Cir. 1993) (a district court "has considerable discretion in deciding whether to reopen a case under Rule 59(e)").

12. Here, the gist of Plaintiff's motion, Docket Entry No. 28, can be reduced to a single-sentence assertion that his amended pleading should be excused from exhaustion requirement because Fort Dix law library staff declined his request for assistance with execution of administrative grievances.  See Docket Entry No. 28.  While Lopez is correct in her observation that this assertion cannot possibly present a "newly discovered" piece of evidence or

akin, this Court need not reach this fine-tuned issue. This is so because Plaintiff's now-added fact does not alter the Court's prior determination that Lopez was entitled to summary judgment on procedural grounds because "it [was and still is] undisputed that Plaintiff did not attempt to submit a 'home-made' grievance (executed on a mere sheet of paper rather than on a pre-printed form) and . . . no such 'home-made' grievance was ever denied by prison officials on the grounds of Plaintiff's failure to utilize a pre-printed form or on any other ground [and, moreover,] it [was and still is] self-evident that [-- if] Plaintiff could complete this District's pre-printed complaint forms, twice, first in order to produce his original complaint in . . . 2009 and then . . . his amended complaint in . . . 2010, even though these [complaint] forms, just as prison grievance forms, utilized relatively small pre-printed fonts" -- then Plaintiff's poor eyesight was not an obstacle barring him from execution of prison grievances. Docket Entry No. 24, at 7-9. Moreover, even if Plaintiff's now-added fact could, somehow, pose a basis for dismissal of Plaintiff's amended complaint on procedural ground, such possibility does not aid Plaintiff's cause. This is so because this Court already entertained the possibility that Plaintiff's amended pleading might, somehow, qualify for excuse of exhaustion

and dismissed Plaintiff's claims on merits, finding that Lopez was entitled to summary judgment on the *substance* of Plaintiff's challenges. See id. 13, 15-18. Indeed, the statements made in Plaintiff's motion for reconsideration and his affidavit cannot alter the facts that: (a) "Lopez, being the Clinical Director, had no constitutional obligation to 'play' an eye doctor; on the contrary, she was obligated not to venture into the areas of medicine in which she had no expertise," and therefore she could not have violated Plaintiff's Eighth Amendment rights by failing to examine Plaintiff's eyes herself; and (b) the record unambiguously established that "Lopez promptly requested an examination of Plaintiff's eyes, and that Lopez's actions resulted in evaluation of Plaintiff's eyesight by an optometrist and an ophthalmologist, and in an improvement of Plaintiff's eyesight as a result of cataract surgeries and constant monitoring." Id. at 17-18. Hence, if the Court were to accept, as true, Plaintiff's position that "Mr. Smith" did not direct law library staff to assist Plaintiff with his grievances, and Plaintiff, somehow, could neither complete those grievances on his own nor submit a "home-made" grievance form, that position would still have no bearing on the Court's substantive determination. Correspondingly, while mindful of Plaintiff's emotions, the

Court is constrained to deny Plaintiff's motion for reconsideration because Plaintiff's disappointment with the outcome of this action is not and cannot operate as a viable basis for altering this Court's prior decision granting Lopez summary judgment.

IT IS, therefore, on this  25th  day of    April   , 2012,

ORDERED that the Clerk shall reopen this matter for the purposes of the Court's examination of Plaintiff's motions for extension of time and for reconsideration of this Court's prior determination, Docket Entries Nos. 26 and 28, by making a new and separate entry on the docket reading, "CIVIL CASE REOPENED"; and it is further

ORDERED that Plaintiff's motion for extension of time, Docket Entry No. 26, is dismissed as moot; and it is further

ORDERED that Plaintiff's motion for  for reconsideration of this Court's prior determination, Docket Entry No. 28, is granted in form and denied in substance,[5] and this Court's prior

---

[5] The Court of Appeals guided that a litigant's motion for reconsideration should be deemed "granted" when the court (the decision of which the litigant is seeking a reconsideration of) addresses the merits — rather than the mere procedural propriety or lack thereof- of that motion. See Pena-Ruiz v. Solorzano, 281 F. App'x 110 at *2-3, n.1 (3d Cir. 2008). However, the fact of the court's review does not prevent the court performing such reconsideration analysis (of the original application, as supplanted by the points raised in motion for reconsideration) from reaching a disposition identical — either in its rationale or in its outcome, or in both regards — to the court's decision previously reached upon examination of the original application. See id.

determination as to Plaintiff's challenges shall remain in force, and these challenges shall remain dismissed with prejudice; and it is further

ORDERED that the Clerk shall close this matter by making a new and separate entry on the docket reading, "CIVIL CASE CLOSED"; and it is further

ORDERED that this Court expressly withdraws its jurisdiction over this action; and it is further

ORDERED that the Clerk shall serve this Memorandum Opinion and Order upon Plaintiff by regular U.S. mail; and it is finally

ORDERED that the Clerk shall serve a copy of this Memorandum Opinion and Order upon Defendant Lopez by means of electronic delivery.

    s/Robert B. Kugler
**ROBERT B. KUGLER**
**United States District Judge**